# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:	)
	)	**JUDGE RICHARD L. SPEER**
Steven/Pamela Hoke	)
	)	Case No. 10-34988
Debtor(s)	)
	)

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). (Doc. No. 17). The Debtors filed a response to the Motion, objecting to the Dismissal of their case. (Doc. No. 21). A Hearing was then held on the matter. (Doc. No. 22). At the conclusion of the Hearing, the Court deferred ruling on the Motion to Dismiss so as to afford the opportunity to consider the matters raised by the Parties. The Court has now had this opportunity, and finds that the Motion of the United States Trustee has merit.

## DISCUSSION

On July 21, 2010, the Debtors, Steven Ray and Pamela Kim Hoke, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. By filing a petition for relief under Chapter 7 of the Code, the Debtors are seeking "an immediate unconditional discharge of personal liabilities for debts in exchange for the liquidation of all non-exempt assets." *Schultz v. U.S.*, 529 F.3d 343, 346 (6th Cir. 2008). This is in contrast to a bankruptcy case brought by an individual under Chapter 11 or 13 of the Code through which debtors, based on a plan subject to approval by the court, propose to repay all or a portion of their debts from their assets or future earnings over a period of time, with a discharge then being entered upon the debtor's successful completion of the plan.

In re: Steven and Pamela Hoke
Case No. 10-34988

From the start, it has been "Congress's preference that individual debtors use Chapter 13 instead of Chapter 7." *Branigan v. Bateman (In re Bateman)*, 515 F.3d 272, 279 (4th Cir. 2008). To implement this preference, § 707(b)(1) provides that a debtor's case may be dismissed if the court "finds that the granting of relief would be an abuse . . . ." Section § 707(b)(3), as cited by the United States Trustee, provides that a finding of abuse may be predicated on whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B).

When assessing the totality of the debtor's financial circumstances to determine if a case should be dismissed for abuse under § 707(b)(3), an often used measure concerns whether the debtor has an ability to repay their unsecured creditors. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). As stated by the Sixth Circuit in *In re Krohn*, "a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease." 886 F.2d at 126. In this matter, the United States Trustee relies solely on its contention that the Debtors have an ability to repay their debts as the basis for its Motion to Dismiss.

A debtor's ability to pay is assessed generally by looking to the amount of disposable income the debtor has available, and whether that income could feasibly finance a Chapter 13 plan of reorganization. *In re Scarberry*, 428 B.R. 403, 407 (Bankr. N.D.Ohio 2009). In the schedules originally submitted with their bankruptcy petition, the Debtors disclosed that they had $262.57 in disposable income and $65,797.65 in general, unsecured debt. In calculating their disposable income, the Debtors, who have two teenage sons, reported $5,827.22 in net monthly income and $5,564.65 in necessary, monthly expenses. For purposes of the Hearing held on Dismissal, however, the Debtors revised their necessary, monthly expenditures upward to $6,067.65, leaving a deficit in their disposable income of $240.43 per month.

Page 2

In re: Steven and Pamela Hoke
Case No. 10-34988

For purposes of an ability to pay analysis under § 707(b)(3), a debtor's disposable income is defined generally as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2); *In re Pier*, 310 B.R. 347, 353 (Bankr.N.D.Ohio 2004). This determination is made by the Court, and thus, when assessing the amount of disposable income available to a debtor, the Court is not required to accept at face value the financial figures put forth by the debtor. Rather, in its role as the trier-of-fact, the Court may make downward adjustments in a debtor's expenses where it is determined that such expenses are not reasonably necessary. Similarly, the Court may impute income to the debtor when it would be equitable to do so – *e.g.*, when the debtor is voluntarily underemployed. *In re Kaminski*, 387 B.R. 190, 195 (Bankr. N.D.Ohio 2008).

In this matter, an appreciable upward adjustment is necessary in the disposable-income figure put forth by the Debtors whereby they claim to have a deficit in their budget of $240.43 per month. On the income side of the equation, the Debtor, Steven Hoke, allocates $464.91 per month from his salary to fund a 401(k) plan and to repay a loan taken against the plan. However, when computing a debtor's disposable income, this Court has not, in the absence of exigent circumstances such as bad health and/or impending retirement, permitted debtors to expense against their income payments made to retirement accounts, including allocations made for the repayment of loans taken against retirement accounts. *In re Brenneman*, 397 B.R. 866, 874 (Bankr. N.D.Ohio 2008). The reason: "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Gonzalez*, 378 B.R. 168, 174 (Bankr. N.D.Ohio 2007) (internal citation and quotation omitted).

At the Hearing held in this matter, the Debtors offered no basis for the necessity of Mr. Hoke's 401(k) expense; nor is any reason apparent. In particular, the Debtors are still relatively young; moreover, while each of the Debtors do have some health issues, neither of the Debtors

Page 3

In re: Steven and Pamela Hoke
Case No. 10-34988

suffers from a debilitating condition which will likely impede their ability to work in the foreseeable future. For these same reasons, the Court also questions the necessity of Mrs. Hoke's monthly contribution to a retirement account.

The Debtor, Mrs. Hoke, reported on her schedules a $377.08 allotment per month for "retirement." (Doc. No. 1). Although the exact nature of this deduction was not disclosed, it would appear to have the attributes of a voluntary contribution, so as to be considered a part of the Debtors' disposable income, as opposed to an involuntary contribution which would not be considered a part of the Debtors' disposable income. *In re Behlke*, 358 F.3d 429 (6th Cir. 2004). On her pay advices, the deduction is reported as a "Before-Tax Deduction." (Doc. No. 3). Likewise, contributions to 401(k) accounts are voluntary and are normally made on a pretax basis. *See* 26 U.S.C. § 401, *et seq.*

In any event, certain expenses claimed by the Debtors are also excessive. First, the Debtors allocate in their monthly budget $220.00 per month for cell phones, and an additional $133.00 per month for "phone, cable, internet." (Doc. No. 20). On its face, this level of an expense, exceeding $350.00 per month, is more than is absolutely necessary, much less reasonable, for what amounts to communication/entertainment related activities. *See In re Mooney*, 313 B.R. 709, 716 (Bankr. N.D.Ohio 2004) ("Although having a cell phone is not per se excessive, paying $120.00 per month is."). As this Court previously noted in a similar type of situation, the question to ask is whether "there exist any less expensive alternatives? Requiring a debtor to make such a showing is not too much to ask. Creditors should not be expected to pay for steak, when hamburger would do." *In re Felske*, 385 B.R. 649, 657 (Bankr. N.D.Ohio 2008).

Page 4

In re: Steven and Pamela Hoke
Case No. 10-34988

In addition, the Debtors report paying $283.00 per month, or $3,396.00 per year, for insurance on their home which they value at $161,668.24. In the absence of evidence to the contrary, this strikes this Court as high.[1] Similarly, the Debtors' transportation costs seem excessive.

Exclusive of debt payments, the Debtors report paying $800.00 per month, or $9,600.00 per year, for transportation costs. This amount is almost twice the amount allowed under the 'means test' formula of § 707(b)(2) which limits the operating costs for two cars to $420.00 per month.[2] While the expenses allowed under the 'means test' of § 707(b)(2) are not strictly applicable in a § 707(b)(3) totality of the circumstances analysis, they do serve as a useful guideline, and where a debtor's actual expenditure significantly exceed an expense allowed by the 'mean test,' a debtor should stand ready to offer a reason as to the absolute necessity of the expense. *In re Brenneman*, 397 B.R. 866, 872 (Bankr. N.D.Ohio 2008). *See also In re Violanti*, 397 B.R. 852, 858 (Bankr. N.D.Ohio 2008) (although not dispositive, court may look to expenses allowed under 'means test' of § 707(b)(2), when assessing abuse under § 707(b)(3)).

Yet, other than a desire to keep their current vehicles, no evidence was offered by the Debtors tending to show that their present vehicles are absolutely necessary for the health and welfare of themselves and their children. For example, while each of the Debtors needs a vehicle to travel to work, the Debtors offered no reason why their specific vehicles are necessary for their employment. Standing out in this regard is Mrs. Hoke's choice of vehicle.

In this bankruptcy case, Mrs. Hoke filed an agreement to reaffirm the debt on her vehicle, a 2007 Mustang. (Doc. No. 15). This model of vehicle may be regarded as a sports car, and thus may

---

[1] See http://www.insurance.ohio.gov/Consumer/OCS/Pages/OCSPubIndexTab2.aspx

[2] http://www.justice.gov/ust/eo/bapcpa/20101101/bci_data/IRS_Trans_Exp_Stds_MW.htm

Page 5

In re: Steven and Pamela Hoke
Case No. 10-34988

be considered a luxury item. The retention of luxury items through the reaffirmation process, however, is frowned upon.[3] *In re Haar*, 360 B.R. 759, 768 (Bankr. N.D.Ohio 2007) (a debtor who seeks to reaffirm on a high amount of secured debt, especially luxury items, may be subject to an action to dismiss under § 707(b)(3)). This case is no exception.

Besides the excessive costs to operate this vehicle, the Debtors allocate from their monthly budget $533.59 to service the debt on the vehicle. Yet contrary to their intentions, the bankruptcy process was never designed to enable debtors to jettison unsecured obligations, thereby freeing up financial resources, so that those financial resources could then be used to retain luxury goods – in essence allowing debtors to perpetuate their bad financial decisions. *In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D.Ohio 2008). As this Court previously commented:

> . . . bankruptcy is meant to provide a debtor with a fresh start, but not a head start. As such, individuals, such as the Debtors in this case, who seek to reaffirm on a large amount of secured debt, which effectively deprives unsecured creditors of a debtor's financial resources, are not viewed with favor in a proceeding brought to dismiss under § 707(b)(3). Simply put, the reaffirmation process in a Chapter 7 bankruptcy was not meant to be used as a device by which debtors could retain unnecessary property to the detriment of their unsecured creditors. This is especially true since the revision to § 707(b), as effectuated by the Congressional Act known as BAPCPA, which relaxed the standard for dismissal, and eliminated the benefit afforded to the debtor that relief under Chapter 7 should be presumed.

*In re Brenneman*, 397 B.R. 866, 875 (Bankr. N.D.Ohio 2008) (internal citations omitted).

---

[3] As a related point, the Court also found it interesting that, on her reaffirmation agreement, Mrs. Hoke disclosed that the Debtors' monthly, household expenses totaled $5,564.65, but when faced with a Motion to Dismiss, the Debtors submitted updated financial information showing that their necessary, household expenses had suddenly risen by about 10%, to $6,067.65 per month.

Page 6

In re: Steven and Pamela Hoke
Case No. 10-34988

In opposition to the Motion of the United States Trustee to Dismiss, the Debtors point to future strains on their budget including a possible decline in income, the expenses associated with braces for their son and additional medical expenses being incurred by Mrs. Hoke. The Court, however, while it does not doubt the veracity of the Debtors' statements, is not persuaded that the Debtors' concerns will render the formulation of a Chapter 13 plan of reorganization unfeasible.

To be sure, the issues raised by the Debtors will need to be addressed. At the same time, the Debtors' concerns do not change the underlying equation that, after tightening their financial belts, they still have some financial resources at their disposal which can be used to make an attempt to repay their creditors. In this way, the Court has previously noted that "Chapter 13 plans of reorganization are sufficiently malleable to handle such contingencies." *In re Jordan*, 428 B.R. 430, 437 (Bankr.N.D.Ohio 2010).

In conclusion, the burden of proof to support dismissal under § 707(b)(1) and § 707(b)(3) is upon the movant, the United States Trustee. *In re Baker*, 400 B.R. 594, 597 (Bankr.N.D.Ohio 2009). For those reasons set forth herein, the United States Trustee has met this burden, with the evidence tending to show that the Debtors have some ability to repay their unsecured debts. As such, § 707(b)(1) requires that this Court dismiss this case unless the Debtors timely converts their Chapter 7 case.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Page 7

In re: Steven and Pamela Hoke
Case No. 10-34988

Accordingly, it is

**ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

**IT IS FURTHER ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, January 31, 2011, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

Dated: January 14, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 8

# CERTIFICATE OF SERVICE

Copies were mailed this 14th day of January, 2011 to:

Pamela Kim Hoke
2762 County Rd B
Swanton, OH 43558

Steven Ray Hoke
2762 County Rd B
Swanton, OH 43558

Patti Baumgartner-Novak
612 S Main St, #104
Findlay, OH 45840

John N Graham
5151 Monroe St, #245
Toledo, OH 43623

Linda Maria Battisti
201 Superior Ave, #441
Cleveland, OH 44114

/s/Diana Hernandez
Deputy Clerk, U.S. Bankruptcy Court